HOTEL HOLDING CO. v. WETHERBEE & WOOD.    (No. 6632.)

(Supreme Court, Appellate Division, First Department.    December 31, 1914.)

LANDLORD AND TENANT (§ 152*) — ALTERATIONS — PROVISIONS OF LEASE — WAIVER.

Where a lease required the lessor to make structural alterations required by the city in the widening of the street, provided the order for such alterations should have been first reduced to judgment, and the lessor made such changes, after notice served on the tenant, for the purpose of avoiding the extra expense of having them made by the city, the lessor thereby waived the proviso requiring the order to be reduced to judgment, and cannot recover the cost of the alterations from the tenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 152, 538–543, 545–549, 551–557; Dec. Dig. § 152.*]

Submission of the controversy between the Hotel Holding Company and Wetherbee & Wood upon an agreed statement of facts. Judgment directed for defendant.

See, also, 146 App. Div. 951, 131 N. Y. Supp. 1120.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Robert C. Beatty, of New York City, for plaintiff.
Alfred A. Wheat, of New York City, for defendant.

HOTCHKISS, J. On November 30, 1908, plaintiff, the owner of the Hotel Gotham, leased the premises to defendant, a corporation, under which lease defendant took and still retains possession. At the time of the lease a so-called terrace existed on the Fifth avenue side of the building, extending from the building line to stoop line. This terrace was without a roof, but was fenced in from the sidewalk by a substantial stone paling resting on stone foundation. By one of the

articles of the lease, defendant bound itself at its own cost to execute and comply with all ordinances and requirements of the public authorities of the borough of Manhattan "affecting said premises, except the structural changes or alterations which are to be made by the lessor at its own expense as provided in the fourth article hereof." By the fourth article, defendant bound itself to make at its own cost all repairs upon the demised premises, and:

"If any order or regulation of the municipal or city authorities * * * shall, within five years from the date of the commencement of the term of this lease, require structural changes in the building on the demised premises necessitated * * * by the widening of Fifth avenue or Fifty-Fifth street, and concerning which said authorities or board at such time has jurisdiction to issue said order, regulation, or requirement, then the cost of complying therewith shall be borne and paid by the lessor: Provided, however, that such order, regulation, or requirement shall first have been reduced to judgment."

The proposed widening of Fifth avenue was a matter of common discussion at the time of the execution of the lease, and on April 21, 1911, defendant wrote plaintiff, saying it had received notice from the commissioner of public works instructing it to make alterations to the hotel premises in preparation for the widening, which alterations would involve the removal of the terrace. Continuing, defendant said:

"While our lease provides that this work shall be done and the expense of same shall be borne by you, we are writing to ask whether or not you would prefer that we undertake it and deduct the cost from our rent. If, on the other hand, you conclude to attend to the matter, we shall be glad to have you submit the necessary plans to us at an early date, so that the work will meet with no unnecessary delay."

On May 17th plaintiff's attorney replied to the above, and asked whether defendant could indicate "just what changes are required to be made, so that I may report to the board of directors as to whether such changes are structural changes," and in the same letter the attorney said:

"That whatever changes are necessary they [plaintiff] prefer to make themselves, should they be such changes as they are required under the lease to make."

On May 19th defendant answered the above, saying that it was unable to give any definite information in regard to the necessary changes; that such information would naturally come from an architect; that defendant had merely received the notification from the authorities, and had forwarded the same, "so that your company might take the matter in hand in accordance with the terms of the lease." On May 25, 1911, a notice was duly issued by the president of the borough of Manhattan and served on defendant, requiring the removal of the encroaching terrace, and this notice defendant on the following day sent to plaintiff. There appears to have been no further communication between the parties, nor was there any request by plaintiff that defendant should refrain from removing the terrace, or that it should take any steps to contest the validity and force of the order

for its removal, which order, the submission states, the "plaintiff was obliged to comply with."

In this situation, on August 4, 1911, with the knowledge of the defendant and for the purpose of avoiding the removal of the terrace by the city authorities, whereby the plaintiff apprehended it might be subjected to excessive cost and that injury might be done to the building, it let a contract for the work, which was subsequently completed at a cost of nearly $13,000, for which amount plaintiff claims to be entitled to judgment, on the theory that it has paid under compulsion from the city authorities moneys which it was the duty of the defendant to pay, inasmuch as there was no obligation resting on plaintiff to pay until and unless the order of the borough president had "been reduced to judgment," which never occurred. Whether the words last quoted threw upon the defendant the necessity of contesting the validity of any ordinance before the cost of complying therewith should be paid, or whether that duty lay upon the plaintiff, it is perfectly manifest that this provision was one intended for the plaintiff's benefit, but which it had the right to waive. It is equally clear that the hereinbefore recited acts of the plaintiff constituted such a waiver.

There is no suggestion that the order of the borough president was defective, and in the submission it is expressly stated that the plaintiff "was obliged to comply" with it. The order appears to have been based on a resolution of the board of estimate and apportionment, dated April 20, 1911, and that, in order to prevent delay to the city in its work of widening the street, the owners and tenants were notified to remove all encroachments "at the earliest moment," and that encroachments not so far removed as to permit the city work to commence by July 1st would be removed by the city at the expense of the owner. Clearly, in this situation, plaintiff had the right to do exactly what it appears to have done, namely, assume that litigation would be fruitless, and proceed at once to remove the incumbrance itself, and thereby avoid the apprehended expense and damage due from a removal by the city.

There should be judgment for the defendant, with costs. All concur.